# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-1432V
UNPUBLISHED

|  |  |
|---|---|
| AMY NORTON,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 14, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Paul R. Brazil, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On September 18, 2019, Amy Norton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table Injury, after receiving the influenza ("flu") vaccine on December 11, 2017. Petition at 1, ¶ 2. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"), and although Respondent conceded Ms. Norton was entitled to a damages award, the parties could not agree on the amount to be awarded.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$55,620.00, reflecting $55,000.00 for her past pain and suffering, plus $620.00 for her past unreimbursed medical expenses.**

## I.  Relevant Procedural History

Along with the Petition, Ms. Norton filed her affidavit and some of the medical records required by the Vaccine Act. Exhibits 1-6, ECF No. 1; *see* Section 11(c). Over the subsequent eight-month period, Petitioner filed the remainder of the required medical records. Exhibits 7-11. ECF Nos. 13, 16.

On February 26, 2021, Respondent filed his Rule 4(c) Report, conceding Petitioner was entitled to compensation for her SIRVA, and I issued a Ruling on Entitlement a few days later. ECF Nos. 23-24. For four months thereafter, the parties attempted to informally resolve the issue of damages. *See, e.g.,* Status Report, Apr. 30, 2021, ECF No. 28. On July 7, 2021, however, they filed a joint status report indicating they had reached an impasse in their damages discussions and requesting that I set a briefing schedule. ECF No. 31.

Petitioner filed her brief on August 24, 2021. Petitioner's Brief in Support of Damages ("Brief"), ECF No. 32. After requesting additional time, Respondent filed his brief on September 8, 2021. Respondent's Brief on Damages ("Opp."), ECF No. 34. During informal email communications, the parties agreed to forego filing any reply briefs. *See* Informal Remark, dated Sept. 8, 2021. The issue is now ripe for adjudication.

## II.  Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for

2

emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves,* Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Human Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

III.     **Prior SIRVA Compensation Within SPU**[4]

A.      **Data Regarding Compensation in SPU SIRVA Cases**

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2021, 2,097 SPU SIRVA cases have resolved since the SPU's inception on July 1, 2014. Compensation was awarded in 2,036 of these cases, with the remaining 61 cases dismissed.

Of the compensated SPU SIRVA cases, 1,187 cases involved a prior ruling that petitioner was entitled to compensation. In only 69 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[5]

1,093 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 25 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 849 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] *See, e.g., Sakovits v. Sec'y of Health & Human Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[6] Agreement |
|---|---|---|---|---|
| **Total Cases** | *69* | *1,093* | *25* | *849* |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $75,000.00 | $70,000.00 | $90,000.00 | $45,000.00 |
| **Median** | **$97,500.00** | **$90,100.00** | **$115,772.83** | **$65,000.00** |
| **3rd Quartile** | $125,360.00 | $119,381.38 | $160,502.39 | $90,000.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B.      Pain and Suffering Awards in Reasoned Decisions

In the 69 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $95,500.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,000.00.[7]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment of 40 days to over six months. In cases with more significant initial pain, petitioners experienced this greater pain for three months or less. All petitioners displayed only mild to moderate limitations in range of motion, and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. The duration of the injury ranged from six to 29 months, with petitioners averaging approximately nine months of pain.

---

[6] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[7] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 95 PT sessions over a duration of more than two years and multiple cortisone injections, was required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering. In the fourth case involving an award of future pain and suffering, the petitioner provided evidence of an ongoing SIRVA expected to resolve within the subsequent year.

## IV.    Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

### A.    The Parties' Arguments

The parties agree Petitioner should be awarded $620.00 for her unreimbursed medical expenses. Brief at 1 n.1; Opp. at 1 n.2. Thus, the only area of disagreement is regarding the amount of compensation which should be awarded for Petitioner's pain and suffering.

Petitioner requests $90,000.00 for this damages component. Brief at 1. Emphasizing the amount of PT she underwent and her MRI results, which she characterizes as severe, Petitioner asserts her award should be greater than the

$75,000.00 awarded to the petitioners in *Attig* and *Bordelon*.[8] Brief at 6-7. In addition to these two comparisons, Petitioner contrasts her injury with those suffered by the petitioners in *Dagen* and *T.E*,[9] cases with pain and suffering awards of $65,000.00 and $70,000.00, respectively. *Id.* at 5-6. She maintains that, despite a gap in treatment of more than a year, she experienced a recurrence of her injury which required further PT in 2020. *Id.* at 6-7.

In reaction, Respondent asserts Petitioner should be awarded only $50,000.00 for her pain and suffering. Opp. at 1. Describing Petitioner's level of pain as mild, Respondent argues that Petitioner's symptoms had resolved by seven months post-vaccination, after only conservative treatment - PT and one cortisone injection. *Id.* at 12. He maintains that Petitioner has not provided sufficient evidence to link the symptoms she experienced in March 2020 to the SIRVA she suffered in 2017. *Id.* 12-13. Distinguishing Petitioner's circumstances from those experienced by the petitioners in the cases she cited, Respondent contends that Petitioner's award for pain and suffering should be similar to that awarded to the petitioners in *Rayborn, Knauss,* and *Ramos*[10] - who received $55,000.00, $60,000.00, and $40,000.00, respectively. Opp. at 14-15.

In his brief, Respondent devotes a significant amount of his argument to a discussion of the Vaccine Act's $250,000.00 cap on awards for pain and suffering. Opp. at 5-12. Respondent also criticizes comparisons between reasoned damages decisions (which, at present, have been issued in more than 75 SPU SIRVA cases) and the "meeting-in-the-middle" method that he believes is sometimes being utilized to split the difference between each side's pain and suffering figure. *Id.* at 14 n.9. Respondent asserts instead that the large number of proffered cases in SPU is a more accurate representation of the appropriate of damages to be awarded. *Id.*

---

[8] *Attig v. Sec'y of Health & Human Servs.*, No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019); *Bordelon v. Sec'y of Health & Human Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019).

[9] *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019); *T.E. v. Sec'y of Health & Human Servs.*, No. 19-0633V, 2021 WL 2935751 (Fed. Cl. Spec. Mstr. May 7, 2021).

[10] *Rayborn v. Sec'y Health & Human Servs.*, No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020); *Knauss v. Sec'y Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018); *Ramos v. Sec'y Health & Human Servs.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021).

### B.      Analysis

The guidance provided by the *Graves* decision is clear,[11] and I have previously addressed the more general arguments about calculation of pain and suffering damages made by Respondent during expedited "Motions Day" hearings and in other damages decisions. While noting that this end result may occur in some cases (and disappoint both sides as a result), I have in fact *rejected* the "meeting-in-the-middle" method Respondent claims is being used, based on the proposition that "each petitioner deserves an examination of the specific facts and circumstances in her or his case." *Sakovits*, 2020 WL 3729420, at *3. But I also have rejected Respondent's argument that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. *Id.* at *4. Even if "settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases," they are not as persuasive as reasoned decisions from a judicial neutral. *Id.* (emphasis in original). Taken as a whole, the data from these decisions can be a helpful gauge of the compensation being awarded in SPU SIRVA cases.

A thorough review of the medical records reveals that Ms. Norton experienced a mild SIRVA injury for approximately three months, significant relief at that point, and almost a complete resolution of her symptoms by seven months post-vaccination. And although Petitioner sought treatment again in March 2020, approximately 27 months post-vaccination, there is scant evidence to connect that occurrence with the SIRVA she suffered in late 2017.

When Petitioner first reported her left shoulder pain to her PCP, 17 days post-vaccination, she described an initial ache for ten days and pain for the week thereafter. Exhibit 2 at 7. Observing that Petitioner exhibited limited range of motion ("ROM"), her PCP diagnosed her with a frozen shoulder and recommended that she call for a PT referral when she returned from a planned week-long trip if her pain continued. *Id.* at 8. An MRI performed later in April 2018, indicates Petitioner's SIRVA was most likely due to the flu vaccine aggravation of a pre-existing but asymptomatic partial tear in the undersurface of the supraspinatus tendon – a common reason for SIRVAs. *See* Exhibit 4 at 13 (results of April 18, 2018 MRI).

At her first PT session on January 12, 2018, Petitioner described her pain as moderate, ranging from two to six on a scale of ten. Exhibit 3 at 1. During PT sessions in January, she consistently reported pain at a level of three. Exhibit 5 at 4, 6, 8, 10, 12. After some minor variations, reports of pain at a level of two and three to four during February, Petitioner obtained significant relief from the cortisone injection she received

---

[11] *See supra* Section II (for further discussion).

on February 21. *Id.* at 14, 20, 24, 26, 28, 30, 32; *see* Exhibit 4 at 22 (regarding injection).

Starting on March 14, 2018, Petitioner consistently reported a lack of pain at multiple PT sessions. Exhibit 5 at 36, 38, 40, 42, 44, 46, 48, 54 (from sessions on March 14 through June 20). The only time Petitioner reported pain was during a June 13 session which followed a month-long[12] break attributed to work commitments and a vacation. Exhibit 5 at 50. At that visit, she rated her pain at a level of four out of ten, but her ROM was noted to be normal. *Id.* at 50, 52. By her next PT session on June 20, Petitioner once again was reported to be pain free. *Id.* at 54. When discharged on July 11, 2018, it was noted that Petitioner was pain-free and had met all PT goals. Exhibit 3 at 5. Petitioner reported that she "was able to kayak this past week without pain." *Id.*

There is no evidence of *any* treatment during the remainder of 2018 and 2019. Then, on March 13, 2019, Petitioner returned to PT complaining of discomfort for the past few months when driving and flying. Exhibit 11 at 9. Petitioner added that "she recently got a dog, and walking the dog on the leash may explain the increase in symptoms." *Id.* She rated her pain as two out of ten. *Id.* Although Petitioner argues this later pain should be attributed to her SIRVA, she has failed to provide sufficient evidence to support that assertion or to counter Respondent's more likely explanation - that this later pain is an *unrelated* aggravation of the rotator cuff tear seen on the 2018 MRI.

Because of the above, the facts and circumstances in Petitioner's case more closely resembles those experienced by the petitioner in *Rayborn*, who suffered mild to moderate symptoms for approximately nine months, and was therefore awarded $55,000.00 for her pain and suffering. *Rayborn*, 2020 WL 5522948, at *11-12. Like the Petitioner in this case, the *Rayborn* petitioner was younger than most SIRVA petitioners and in good health at the time of vaccination. *Id.* at *2.

In contrast, the cases cited by Petitioner involved petitioners who experienced more obviously-severe symptoms than those the Petitioner in this case suffered. For example, although the duration of *Dagen* petitioner's SIRVA was similar to that suffered by Petitioner, she reported pain levels which ranged from four to nine and an initial level of ten out of ten. *Dagen,* 2019 WL 7187335, at *2-3, 9-10.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $55,000.00 represents a fair and appropriate amount of**

---

[12] Although the record indicates the break was three weeks long, the PT records show Petitioner last session, prior to June 13, occurred on May 9, 2018. *See* Exhibit 5 at 48-49.

**compensation for Petitioner's actual pain and suffering.[13] I also find that Petitioner is entitled to $620.00 in actual unreimbursable expenses.**

**I thus award Petitioner a lump sum payment of $55,620.00, representing $55,000.00 for her actual pain and suffering and $620.00 for her actual unreimburseable expenses in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[14]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[13] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.